[Cite as *State v. Torkelson*, 2026-Ohio-2861.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-05-016 |
| vs. | : | OPINION AND JUDGMENT ENTRY 7/27/2026 |
| JUAN Z. TORKELSON, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20220203

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Culp, Parsons, and Murray L.L.C., and Joshua Beasley for appellant.

## **O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Juan Z. Torkelson appeals his conviction and sentence in the Madison County Court of Common Pleas, arguing that his speedy trial rights under the Interstate

Agreement on Detainers were violated and that his trial counsel was ineffective for failing to file a motion to dismiss. For the reasons explained below, we affirm.

## I. Background on Interstate Agreement on Detainers

{¶ 2}   This case involves the application of the Interstate Agreement on Detainers ("IAD"). "[T]he IAD is a congressionally sanctioned interstate compact under the Compact Clause, Article I, Section 10, of the United States Constitution" and is subject to federal law. *State v. Black*, 2015-Ohio-513, ¶ 4, citing *Carchman v. Nash*, 473 U.S. 716, 719 (1985). Specifically, the IAD is a "compact among 48 states, the District of Columbia, and the United States that establishes procedures for one jurisdiction to obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing the prisoner to trial." *Black* at ¶ 3, citing *Cuyler v. Adams*, 449 U.S. 433, 435 (1981). The "objective of the IAD is 'to implement a defendant's right to a speedy trial and to avoid excessive interference with a prisoner's rehabilitation in the state prison system.'" *Black* at ¶ 7, quoting *United States v. Palmer*, 574 F.2d 164, 167 (3d Cir. 1978).

{¶ 3}   The IAD implements this objective by regulating the use of detainers. A "detainer" is "'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.'" *State v. Sanchez*, 2006-Ohio-4478, ¶ 19, quoting *Carchman* at 719. "The IAD outlines two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of another state for disposition of charges pending there." *Black* at ¶ 8. "'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.'" *Id.*, quoting *Cuyler* at 444. This case deals with the interpretation of the prisoner-initiated procedure outlined in Article III(a)-(b) of the IAD.

{¶ 4}   With regard to this procedure, Ohio's codification of Article III(a) of the IAD provides that whenever a prisoner in one state has a detainer lodged against him in another state, he may request a final disposition in the state that has the detainer lodged against him. R.C. 2963.30, Article III(a). The statute specifies the procedure for how the prisoner must deliver the request for final disposition to the necessary parties. R.C. 2963.30, Article III(b). Specifically, the request for final disposition "shall be given or sent by the prisoner to the warden . . . or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail. . ." R.C. 2963.30, Article III(b). Article III(a) further provides that after a prisoner "shall have caused to be delivered" to the appropriate prosecuting officer and court his request for final disposition, "he shall be brought to trial within one hundred eighty days." R.C. 2963.30, Article III(a).

{¶ 5}   The Unites States Supreme Court in *Fex v. Michigan*, 507 U.S. 43, 52 (1993), analyzed the IAD statute and held that the "180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition . . . has *actually been delivered* to the court and prosecuting officer of the jurisdiction that lodged the detainer against [the prisoner]." (Emphasis added.)

## II. Factual and Procedural Background

{¶ 6}   On October 14, 2022, a Madison County Grand Jury indicted Torkelson on six offenses with seven attached specifications, as follows:

| Count | Offense | Revised Code Section of Offense | Offense Level | Attached Specification (if any) | Revised Code Section of Specification |
|---|---|---|---|---|---|
| 1 | Felonious Assault | R.C. 2903.11(A)(2) | F1 | (1) Firearm; and (2) Repeat Violent Offender | (1) R.C. 2941.145(A); and (2) R.C. |

| | | | | | 2941.149(A) |
|---|---|---|---|---|---|
| 2 | Felonious Assault | R.C. 2903.11(A)(2) | F1 | (1) Firearm; and (2) Repeat Violent Offender | (1) R.C. 2941.145(A); and (2) R.C. 2941.149(A) |
| 3 | Failure to Comply | R.C. 2921.331(B) | F3 | Firearm | R.C. 2941.145(A) |
| 4 | Having Weapons While Under Disability | R.C. 2923.13(A)(2) | F3 | Firearm | R.C. 2941.141(A) |
| 5 | Having Weapons While Under Disability | R.C. 2923.13(A)(1) | F3 | Firearm | R.C. 2941.141(A) |
| 6 | Obstructing Official Business | R.C. 2921.31(A) | F5 | | |

{¶ 7} The indictment stemmed from allegations that Torkelson shot at police officers during a traffic stop and then fled on foot. Torkelson was later picked up in West Virginia by U.S. Marshals and sent to Illinois where he was held on separate charges unrelated to this appeal.

{¶ 8} On April 5, 2024, three filings were placed on the docket of the Madison County Court of Common Pleas in Torkelson's criminal case. All three were signed by Torkelson and were completed on Illinois state court forms pertaining to Illinois' *intra*state (as opposed to *inter*state) detainer statute. The first document, which was undated, was Torkelson's "Demand for Speedy Trial And/Or Quash Warrant." In this demand, Torkelson requested speedy trial pursuant to Illinois law and indicated that he was incarcerated at the Illinois River Correctional Facility in Canton, Illinois. The second document, dated March 21, 2024, was a motion to dismiss in which Torkelson alleged that he made his speedy trial request on March 21, 2024 (that is, the same day), and that 160 days had lapsed since his request. The third document, also undated, was a "Petition for Writ of Habeas Corpus Ad Testificandum." Torkelson attached the Madison County warrant on indictment issued in the case before us, listing the charges described above.

{¶ 9} Torkelson's assertion in his motion to dismiss that 160 days had elapsed since he made his speedy trial demand was incorrect; even by the time the three documents were filed in Madison County, far less time had elapsed than 160 days. On April 30, 2024, the Madison County common pleas court denied Torkelson's motion to dismiss because the court found that the "[o]ne hundred sixty . . . days ha[d] not passed."

{¶ 10} On November 12, 2024, a letter from the warden of the Illinois River Correctional Center to the Madison County prosecutor and clerk of courts was placed on the docket of the Madison County common pleas court in Torkelson's criminal case. The letter referred to three attached documents, all of which were standard forms pertaining to the IAD. The first document, which was IAD Form II and titled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information, or Complaints," requested final disposition of Torkelson's pending charges in Madison County. This document was signed by Torkelson. The second document, which was IAD Form III and titled "Certificate of Inmate Status," described the conditions under which Torkelson was being held in Illinois state prison. The third document, which was IAD Form IV and titled "Order to Deliver Temporary Custody," was signed by the warden of the Illinois River Correctional Center and offered to deliver temporary custody of Torkelson to Madison County for prosecution of the pending charges.

{¶ 11} The November 12, 2024 filing packet also included an October 8, 2024 detainer sent by the Madison County Sheriff to the Illinois River Correctional Center, requesting the Illinois facility to make arrangements for Torkelson to face his pending charges in Madison County.

{¶ 12} On January 13, 2025, Torkelson was arraigned on the Madison County charges and on January 14, 24, and 29, 2025, he made various discovery requests. A

few months later, on March 13, 2025, Torkelson requested a continuance of his March 20, 2025, trial date.

{¶ 13} The next day, the common pleas court held a pretrial hearing. At the hearing, the court granted Torkelson's motion to continue, and Torkelson's defense counsel stipulated that the continuance would toll the IAD speedy trial time. The trial court also asked Torkelson if he agreed with the tolling of the IAD speedy trial time, and Torkelson answered in the affirmative. The court then orally stated that the IAD time would be tolled from March 20, 2025, until May 1, 2025.

{¶ 14} On April 17, 2025, Torkelson pleaded guilty to Counts One and Two and the remaining counts of the indictment were dismissed. At the plea hearing, the court conducted a proper Crim.R. 11 colloquy before accepting Torkelson's guilty plea.

{¶ 15} The trial court later held a sentencing hearing. The court sentenced Torkelson to consecutive prison terms.

{¶ 16} Torkelson appealed, raising two assignments of error, which we will analyze together.

### III. Law and Analysis

{¶ 17} Torkelson's first assignment of error states:

THE TRIAL COURT ERRED BY BRINGING TORKELSON TO TRIAL AFTER THE 180 DAY DEADLINE FOR A SPEEDY TRIAL PURSUANT TO ORC 2963.30- ARTICLE III(a) HAD PASSED

{¶ 18} Torkelson's second assignment of error states:

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHICH HARMED TORKELSON IN VIOLATION OF HIS FOURTHEENTH (sic) AND SIXTH AMENDMENT RIGHTS

{¶ 19} In support of his first assignment of error, Torkelson argues that the IAD speedy trial clock began on April 5, 2024 when he "substantially complied" with the IAD

by "making various filings requesting speedy trial," and as a result the IAD's 180-day time clock expired before his conviction on April 17, 2025, violating his IAD speedy trial rights. In support of his second assignment of error, Torkelson argues that his trial counsel was ineffective for failing to file a motion to dismiss based on the violation of his IAD speedy trial rights, and that his case would have been dismissed with prejudice if his counsel had done so.

{¶ 20} But Torkelson puts the cart before the horse. We cannot examine the merits of his arguments without first determining whether Torkelson's guilty plea bars those arguments. We find that it does.

{¶ 21} Crim.R. 11(B)(1) provides that, "[t]he plea of guilty is a complete admission of the defendant's guilt." As a result, it is well established that a guilty plea waives all errors other than those that are (1) jurisdictional, or (2) related to the entry of the plea itself. *See State v. Allen*, 2026-Ohio-1097, ¶ 13-14 (12th Dist.). Applying this general principle to the specific context of an appeal arguing for reversal based on an IAD violation, we recently held that "an IAD defect is non-jurisdictional" and is waived by "a knowing and voluntary guilty plea." *Allen* at ¶ 18.

{¶ 22} Because an IAD defect is non-jurisdictional and is thus waived by a guilty plea, the alleged IAD violation that is the focus of Torkelson's first assignment of error may only be considered on appeal if it relates to the validity of Torkelson's plea. *Allen* at ¶ 13-14. Likewise, Torkelson's ineffective assistance of counsel argument may only be considered if his counsel's alleged deficient performance relates to the validity of his plea. *State v. Moxley*, 2012-Ohio-2572, ¶ 18 (12th Dist.), citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992) ("A defendant who pleads guilty also waives the right to claim ineffective assistance of counsel, except to the extent that counsel's deficient performance caused the plea to be less than knowing and voluntary.").

{¶ 23} Here, neither of Torkelson's arguments (the alleged IAD defect nor Torkelson's counsel's alleged deficient performance) relate to the validity of his guilty plea. In fact, Torkelson does not challenge the validity of his guilty plea at all; therefore, we will not create an argument on his behalf. *See Mallikarjunaiah v. Shankar*, 2020-Ohio-4508, ¶ 25 (12th Dist.), quoting *Dudley v. Dudley*, 2019-Ohio-4309, ¶ 10 (12th Dist.) ("'An appellate court will neither construct assignments of error nor create arguments on behalf of an appellant because it is not the duty of an Ohio appellate court to raise arguments for the parties.'"). Even so, we note there is nothing in the record that indicates that Torkelson's guilty plea was invalid.

{¶ 24} For these reasons we hold that Torkelson's guilty plea waived his IAD violation argument and his ineffective assistance of counsel argument. *Allen* at ¶ 23. We therefore do not need to consider those arguments further. Thus, we overrule Torkelson's first and second assignments of error.

## IV. Conclusion

{¶ 25} We affirm Torkelson's conviction and sentence, as we find that Torkelson waived the arguments he raises on appeal.

{¶ 26} Judgment affirmed.


HENDRICKSON and M. POWELL, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Mike Powell, Judge*